**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**MYRA CATHERINE SOLLIDAY,**

      **Plaintiff,**

**vs.**                              **Case No. 4:07cv363-RH/WCS**

**OFFICER SPENCE, et al.,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION[1]

    Several summary judgment motions are pending in this case.[2]  This report and recommendation concerns only the motion for summary judgment filed by Defendant Knight, doc. 68, supported by a separate statement of material facts, doc. 72.  Plaintiff, who is *pro se*, was directed to file a response to the motion, doc. 70, and her response was filed on September 22, 2008.  Doc. 76.  Plaintiff then filed a supplement to her prior

---

    [1] The first report and recommendation, doc. 52, entered in this case was on Defendant Knight's motion to dismiss.  That motion, filed by the Defendant *pro se*, alleged failure to state a claim.  Doc. 47.  It was denied.  Docs. 52, 65.

    [2] The remaining motions to be decided are:  (1) summary judgment motion filed by Defendants Williams, Rivera, Horton, and Lappin, doc. 80; (2) Plaintiff's amended motion for summary judgment, doc. 89.

response as opposition to the motion.  Doc. 78.  Defendant Knight's motion for summary

judgment is ready for a ruling.

**Allegations against Defendant Knight, doc. 36**[3]

Plaintiff's second amended complaint, brought pursuant to <u>Bivens</u>,[4] alleged that

Defendant Knight began "harassing" her in "late 2004, early 2005."  Doc. 36, p. 5.

Plaintiff stated that when Defendant Knight "worked the compound," he "would always

stop [Plaintiff] and pat [her] down."  *Id.*  She alleged that he would "run his hands slowly

over [her] body, [her] rib cage, under [her] bra, waist, stomach, hips, down [her] legs,

then back up."  *Id.*  Plaintiff stated that the pat downs "would always appear to be

regular procedure, but it didn't feel regular."  *Id.*  She alleged that Defendant Knight

would always pat her down when she came into the unit.  *Id.*  Plaintiff alleged that when

Defendant Knight had a metal detector, he would make comments "about playing with

sex toys."  *Id.*  Plaintiff alleged that Defendant would bring her mail to her room, and

would sit and talk with her.  *Id.*  She alleged he would sometimes be waiting in Plaintiff's

room when she would come out of the shower, and would make comments during pat

down searches about how much he liked touching her body.[5]  *Id.*  She claimed he would

touch her legs and "started going higher up," and "always wanted me to touch his

penis."  *Id.*  He then "started talking about oral sex . . . ."  *Id.*  Defendant Knight allegedly

---

[3] These allegations are the same as previously stated in the first report and
recommendation, doc. 52, pp. 3-4.

[4] <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S.
388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[5] Plaintiff also made a broad allegation of being "sexually abused" by the
Defendant prison officers.  Doc. 36, p. 8.

told Plaintiff that he would somehow arrange to be alone with her, and "said that he had

ways of making it happen." *Id.* Plaintiff also stated that Defendant Knight "sat in on a

counseling meeting" she had, suggesting to her that she "couldn't get away from him"

and telling Plaintiff that the administrative staff "always did what he wanted them to do."

*Id.*, at 5-6. Plaintiff states that he made it clear that inmates who "gave him a hard time"

would be harassed and tormented and "staff would back him up." *Id.*, at 6. Plaintiff

alleged that the "corrupt officers had a network within the prison." *Id.*

**Basis for motion for summary judgment, doc. 68**

Defendant Knight argues that Plaintiff raises issues that were not properly and

timely exhausted, and that the complaint fails to state a claim for emotional injury. Doc.

68.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendants initially have the burden to

demonstrate an absence of evidence to support the nonmoving party's case. Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with

evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An

issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v.

Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the

material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of

evidence is insufficient. The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Alleged failure to exhaust administrative remedies**

### The relevant Rule 56(e) evidence

It is judicially noted that on June 16, 2006, Defendant Jimmy Harris Knight entered a guilty plea before me to a first degree misdemeanor of knowingly engaging in a sexual act with a person under his custodial, supervisory, and disciplinary authority. Case No. 4:06cr25-WCS, docs. 1, 13, 14, and 15. That prisoner was not Plaintiff. Docs. 14 (statement of facts to support the guilty plea). The offense occurred in June, 2005. *Id.* It is also judicially noted that on June 20, 2006, an indictment was filed in this court accusing six correctional officers at FCI Tallahassee of a conspiracy to violate

contraband rules and to coerce and intimidate female prisoners to have sexual relations

with them.  Case Number 4:06cr36-RH.  These circumstances are presented more

clearly in the motion for summary judgment filed by Defendants Lappin, Rivera, Horton,

and Williams.  Doc. 80, pp. 5-6.  Plaintiff does not contest that she was assigned to the

SHU (special housing unit) pending the investigation of these criminal offenses in

January, 2006.

Defendant sets forth what Defendant contends is Plaintiff's grievance history,

obtained from Plaintiff in discovery.[6]  Defendant mentions a grievance on October 26,

2006, which was denied on November 1, 2006, a formal grievance on December 11,

2006, and an "administrative grievance" on January 4, 2007, which Defendant contends

was denied for procedural reasons on January 26, 2007.  Doc. 73, p. 2.  The January

26 denial is an important part of Defendant's argument that Plaintiff procedurally

defaulted.  Defendant also contends that there were no "sensitive" grievances filed

directly with the central office, and that, in any event, Plaintiff did not file her grievances

at the institutional level within 20 days of the occurrence.

Defendants Lappin, Rivera, Horton, and Williams, who appear to have a better

understanding of Plaintiff's grievance history, disagree with Defendant Knight.  Those

Defendants contend that Plaintiff adequately exhausted her administrative remedies

with respect to her claims of sexual assault by correctional officers.  Doc. 80, pp. 7-8.

Cited for this are two grievances heard on the merits at the regional level and denied on

---

[6] It is recognized that Defendant is no longer a correctional officer, and is at a
disadvantage in obtaining evidence of Plaintiff's grievance history.  Nonetheless, as will
be explained ahead, Defendant has the burden of proof with respect to the affirmative
defense of failure to exhaust administrative remedies.

February 1, 2007, and a grievance at the BOP central office, denied on May 3, 2007.

These Defendants contend that the procedural rejection of a grievance by the central

office on January 26, 2007, was rejection of a grievance Plaintiff had submitted to the

central office on January 24, 2007, not a rejection of the grievance submitted on

January 4, 2007, to the regional office.  Doc. 80, p. 9.  While these argument are

submitted in support of the motion for summary judgment on behalf of these

Defendants, the position taken by these Defendants is the same as my own conclusion

relying solely upon the materials filed by Plaintiff and Defendant Knight.  The analysis

which follows relies solely upon those materials.

        The record now contains a tangled web of grievances concerning the assault

alleged to have occurred by Defendant Knight.  Three grievances, however, at the three

required levels, show that Plaintiff exhausted remedies as to that claim.

        Plaintiff filed a grievance of a "sensitive nature" on June 21, 2006, with the

Southeast Regional Office of the BOP.  Doc. 76, ex. B (doc. 76-2, pp. 4-6).[7]  Plaintiff

alleged in that grievance that she was placed in the SHU (special housing unit) on

January 10, 2006, while under investigation "for involvement with an officer."  Doc. 76,

ex. B (doc. 76-2, p. 5).  She explained that:

> At first I denied any alligations [sic] because I was afraid, ashamed, and
> humiliated, and afraid of retribution from the officers involved.  However,
> after 3 months of having time to reflect on what the investigators stated to
> me about being violated and raped, I finally cooperated complete with their
> investigation, giving them sworn statements describing the abuses.

---

[7] The exhibits are referenced first as provided in paper form and second, as filed
on the electronic docket.  As a *pro se* Plaintiff will not have access to the electronic
record, both citations are provided.

> I'm sending this directly to Region because I was told by George Williams,
> the SIS investigator, that I no longer have any Administrative Remedy left
> abailable [sic] to me here.  Also, none of the 8-1/2's and BP9's I'm
> submitting are being responded to or acknowledged.

Doc. 72, Ex. B (doc. 76-2, p. 5).  Plaintiff's "sensitive" grievance was procedurally

denied on July 3, 2006.  Doc. 76, ex. B (doc. 76-2, p. 4).  It was determined that the

issue raised was "not sensitive."  *Id.*  The denial advised Plaintiff that she should "first

file a BP-9 request through the institution for the Warden's review and response before

filing an appeal at this level."  *Id.*

On September 20, 2006, Plaintiff filed an informal grievance.  Doc. 76, Ex. B

(doc. 76-2, p. 7).  She was then at the FDC Miami, and complained that she had just

learned that her detention there was indefinite.  *Id.*  There was no claim against Knight.

The response told her she had to maintain clear conduct for 18 months before a transfer

request would be considered, and that her stay was not indefinite.  *Id.*

On October 2, 2006, Plaintiff filed a request for administrative remedy.  Doc. 76,

Ex. B (doc. 76-2, p. 8).  She complained that she was illegally housed at FDC Miami "as

part of an investigation/incident I'm told I'm not even a part of."  *Id.*  There was no claim

against Knight.  What *appears* to be the response (dated October 30, 2006), because it

is the next document, advised Plaintiff that the responder could not understand the

request.  Doc. 76, Ex. B (doc. 76-2, p. 9).  But this is not the response.  Correlating the

case numbers (430543-F1), the response is dated November 2, 2006, by the Warden,

and advises Plaintiff that she was not being held illegally, that she was she was

transferred and treated properly.  Doc. 78 (doc. 78-2, p. 8).  In any event, this grievance

did not make any claim against Defendant Knight.

On October 6, 2006, Plaintiff filed an informal grievance.  Doc. 76, Ex. B (doc. 76-2, p. 10).  She stated that she was trying to exhaust her administrative remedies as required by the PLRA to resolve an "Eighth Amendment" violation.  *Id.*  The grievance alleged no facts, stated no specific Eighth Amendment violation, and did not mention Defendant Knight.  *Id.*  The grievance was rejected on October 26, 2006, with the statement that the responder was unable to identify exactly what Plaintiff sought.  *Id.*  Added to this was the note: "Inmate does not wish to clarify her allegations."  *Id.*

On October 26, 2006, Plaintiff filed her first grievance alleging a claim against Defendant Knight.  The was an informal grievance filed at her Miami institution alleging that she had been "raped and molested" by officers Spence, Dixon, and Knight while at FCI Tallahassee.  Doc. 76, Ex. B (doc. 76-2, p. 11).  Plaintiff alleged that the crimes were being "swept under the carpet."  *Id.*  Plaintiff asked for a reduction in her sentence. *Id.*  The grievance was rejected *on the merits* with the note that reduction of a prison term is a matter for the courts.  *Id.*  It was also suggested that she obtain a lawyer to pursue the matter through the court system.  *Id.*  The rejection is signed on November 1, 2006.  *Id.*  According to Defendant Knight, Plaintiff claimed she never received the rejection, doc. 68, p. 4, but the grievance has a handwritten note on it that the rejection was "returned [resent] to inmate" on December 21, 2006.  Doc. 76, Ex. B (doc. 76-2, p. 11.

On November 13, 2006, Plaintiff filed an appeal to the regional director, apparently from denial of the October 2, 2006, grievance, complaining of her institutional assignment.  Doc. 76, Ex. B (doc. 76-2, p. 13).  This was returned to Plaintiff, and she sent it again on November 29, 2006.  Doc. 76, Ex. B (doc. 76-2, p. 15).

In any event, the October 2nd grievance did not mention Defendant Knight, so this grievance appeal is not relevant to the exhaustion question with respect to Defendant Knight.

Plaintiff filed a formal grievance at the institutional level on December 11, 2006, indicating that she had previously submitted two BP8's on October 6, 2006, and October 26, 2006, which "had not been responded to."  Doc. 68, ex. A (doc. 68-2, p. 2); doc. 76 (doc. 76-2, p. 16).  The only copy of this grievance is a typed sheet of paper.[8] Defendant Knight, however, treats this as a formal grievance dated December 11, 2006, doc. 68, p. 4, and the court will do likewise. Plaintiff complained of being "raped and molested by three prison guards," and specifically named Defendant J. Knight.  *Id.* Plaintiff also complained about the transfer to Miami and a pending transfer to Dublin, California.  Doc. 76, Ex. B (doc. 76-2, p. 16).  Plaintiff asserted that her Eighth Amendment rights were violated, that she was further denied rights by "such lack of regard," and that her right "having been, and continuing to be grossly violated."  *Id.* Defendant Knight has not provided any evidence that Plaintiff received a response to this grievance at the institutional level.  This was the second grievance alleging a claim against Defendant Knight.

---

[8] This document is not signed, was typed on a blank piece of paper, and typed on the top of the page is: "Copy of BP 9 submitted 12/11/06."  Doc. 68, ex. A (doc. 68-2, p. 2).  It is not addressed to any person, not on any Bureau of Prisons form, and does not appear to be an "official" grievance.  *Id.*  It appears to be a copy of what was sent in that formal grievance.

Plaintiff next filed an appeal to the regional director, dated January 4, 2007.  Doc. 68, ex. A (doc. 68-2, p. 3); doc. 78, (doc. 78-2, p. 10).[9]  Plaintiff states she was going forward to the next stage of the grievance process, having not received a response to her grievance (of December 11, 2006).  *Id.*  Plaintiff alleged that her "Constitutional and Due Process rights are being violated and grossly disregarded." Doc. 78 (doc. 78-2, p. 10).  She stated she felt no less "violated and raped by the process" and the way the "ordeal has been conducted."  *Id.*  She mentions the fact that the officers had taken advantage of her vulnerabilities "under their authority and control."  Consequently, even though a transfer is part of this grievance,[10] this document, liberally construed, continues the process of grieving a rape by officers at FCI Tallahassee.  *Id.*  This appeal bears a case number 436973-R1.  Doc. 78, (doc. 78-2, p. 10) (though this document appears three times in this record, the case number is only on this document, the most legible one).

Defendant argues that the response to the January 4, 2007, appeal is dated January 26, 2007.  Doc. 68, p. 4; doc. 72, p. 2.  Cited for this is doc. 68, Exhibit A.  *Id.*  This document cannot be the decision upon Plaintiff's January 4, 2007, appeal to the regional director.  This document comes from the administrative remedy coordinator at the BOP *central office*, the next level above the regional director, and refers to a "central

---

[9] A considerably more legible copy of this appeal was filed by Plaintiff in her response to the summary judgment motion, statement of facts.  Doc. 78, (doc. 78-2, p. 10).

[10] She sought a sentence reduction and assignment to camp status.  *Id.*  An addendum dated January 4, 2007, complained of a transfer to Dublin, California.  Doc. 68, ex. A (doc. 68-2, p.  4); doc. 78, (doc. 78-2, p. 11).

office appeal" received on January 24, 2007.  Doc. 68 (doc. 68-2, p. 5); doc. 78 (doc. 78-2, p. 13).

As further evidence that the January 26, 2007, document came from the central office, see doc. 78 (doc. 78-2, p. 17).  In that undated document, Plaintiff corresponds with the office of general counsel and review, central office bureau of prisons, noting the January 26th rejection, and ask for more time to "respond."  *Id.*  The document from the central office dated January 26, 2007, is a denial of an appeal by Plaintiff on January 17, 2007, and apparently (according to the other Defendants) received on January 24, 2007.  That unsigned appeal is found in document 76 (doc. 76-2, pp. 19 and 20 (duplicate)).  Indeed, Plaintiff explains this in her letter of April 4, 2007, to the regional director.  Doc. 76 (doc. 76-2, p. 21).  There she states that never received her BP10, and thus filed her BP11 on January 17, 2007, but that appeal (to the central office) was rejected because she did not have the earlier stages of the appeal attached.  She asks the regional director to provide her with a copy of her BP10 filed on November 13, 2006.  *Id.*  As noted above, on November 13, 2006, Plaintiff filed an appeal to the regional director, apparently from denial of the October 2, 2006, grievance, complaining of her institutional assignment.  Doc. 76, Ex. B (doc. 76-2, p. 13).  In summary, the January 26, 2007, central office denial related to the November 13, 2006, grievance, a grievance that did not allege a claim against Defendant Knight.

Instead, the denial of the January 4, 2007, appeal to the regional director is the one dated February 1, 2007.  Doc. 78 (doc. 78-2, p. 12).  This rejection refers to an appeal received on January 11, 2007, which would be approximately the time that an appeal dated January 4, 2007, would have been received by the regional director, and it

references a regional appeal number 416288-R3.[11]  *Id.*  This response explains at

length that the criminal investigation was ongoing and that Plaintiff had been transferred

to Miami for her safety.  *Id.*  The response further explained that a sentence reduction

was not within the authority of the BOP, and that the grievance procedure is not suitable

for obtaining monetary relief.  *Id.*  The response noted that Plaintiff could appeal to the

Office of General Counsel within 30 days from February 1, 2007, the "date of this

response," if dissatisfied.  *Id.*  This is the second response on the merits to Plaintiff's

grievance against Defendant Knight.

There is also a document from the regional director dated April 20, 2007, stating

that Plaintiff's appeal to the regional director was rejected and returned to her on

December 12, 2006.  Doc. 78 (doc. 78-2, p. 19).  This perhaps relates to the November

13, 2006, appeal, which, as noted above, was not a grievance about a rape committed

by Defendant Knight.  This appears to be a response to a letter sent by Plaintiff on April

4, 2007, asking about what had happened to her appeal.  Doc. 76 (doc. 76-2, p. 21).

Finally, there is a document dated May 3, 2007, signed by the national inmate

appeals administrator.  Doc. 76 (doc. 76-2, p. 25).  This document follows a document

dated March 13, 2007, from the same office, doc. 76 (doc. 76-2, p. 24), but since the

dates are different, it does not seem reasonable to read them together.  The response

states that it is responding to a grievance that Plaintiff's "Constitutional and Due

Process rights are being violated and grossly disregarded."  Doc. 76 (doc. 76-2, p. 25).

This must be the central office response to an appeal from the denial of the January 4,

---

[11] None of the numbers correlate to a particular grievance at a lower level, but
that appears to be because each level assigns a new number.  In any event, Defendant
bears the burden of proof and has not explained any of this.

2007, grievance appeal at the regional level because this is exactly the language used by Plaintiff in the January 4th grievance at the regional level.  The Administrator of National Inmate Appeals provided essentially the same response as had been provided at the two lower levels. He wrote that Plaintiff's allegations of staff misconduct had been taken seriously and referred for investigation, but advised:

> As to your request for monetary compensation, the Administrative Remedy Program does not ordinarily provide for monetary relief.  Your request for monetary compensation should be pursued through the appropriate statutorily mandated procedure such as the Federal Torts Claim Act to resolve this issue.

Doc. 76 (doc. 76-2, p. 25).  Consequently, this is the third response on the merits to Plaintiff's grievance against Defendant Knight.

Plaintiff's statement of facts makes clear that her "abuses . . . ended before she was placed in the SHU."  Doc. 76, p. 6.  Plaintiff was placed in the SHU on January 10, 2006.  *Id.*  Plaintiff states that her contact was with Defendant in her room, not in the SHU.  Doc. 76, p. 6.

**Legal analysis, exhaustion of administrative remedies**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2.  The exhaustion requirement of § 1997e(a) is not jurisdictional.  Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)).  Exhaustion, however, is mandatory, whether the claim

is brought pursuant to § 1983 or <u>Bivens</u>.  <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998); <u>Woodford v. Ngo</u>, 548 U.S. at 85, 126 S.Ct. at 2382.  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).  The Court may not consider the futility of administrative remedies, but only the availability of such.  <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* <u>Alexander</u>, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  <u>Booth v. Churner</u>, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

However, an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies."  <u>Turner v. Burnside</u>, 541 F.3d 1077, 1083 (11th Cir. 2008).  "[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."  *Id.*, at 1084 (citations omitted).

> A remedy has to be available before it must be exhausted, and to be
> "available" a remedy must be capable of use for the accomplishment of
> [its] purpose."  Remedies that rational inmates cannot be expected to use
> are not capable of accomplishing their purposes and so are not available.

*Id.* (citation omitted).

> We conclude that a prison official's serious threats of substantial retaliation
> against an inmate for lodging or pursuing in good faith a grievance make
> the administrative remedy "unavailable," and thus lift the exhaustion
> requirement as to the affected parts of the process if both of these
> conditions are met:  (1) the threat actually did deter the plaintiff inmate
> from lodging a grievance or pursuing a particular part of the process; and
> (2) the threat is one that would deter a reasonable inmate of ordinary
> firmness and fortitude from lodging a grievance or pursuing the part of the
> grievance process that the inmate failed to exhaust.

*Id.*. at 1085.

"The defendants bear the burden of proving that the plaintiff has failed to exhaust

his available administrative remedies."  Turner v. Burnside, 541 F.3d at 1082 (citations

to Jones v. Bock and other cases omitted).  A prisoner must also comply with the

process set forth and established by the grievance procedures.  *See* Miller v. Tanner,

196 F.3d 1190, 1193 (11th Cir. 1999).  The "PLRA exhaustion requirement requires

proper exhaustion."  Woodford v. Ngo, 548 U.S. at 93, 126 S.Ct. at 2387.  "Proper

exhaustion demands compliance with an agency's deadlines and other critical

procedural rules . . . ."  *Id.*, 548 U.S. at 90, 126 S.Ct. at 2386.

Even if a grievance is initially denied as untimely, a prisoner must appeal the

denial of the grievance.  *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting

Georgia's inmate grievance procedures allow "the grievance coordinator to waive the

time period for filing a grievance if 'good cause' is shown").

> To exhaust administrative remedies in accordance with the PLRA,
> prisoners must "properly take each step within the administrative process."

*Johnson*, 418 F.3d at 1158[12] (internal quotation marks omitted).  If their initial grievance is denied, prisoners must then file a timely appeal.  *See id.* (stating in *dicta* that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require" (internal quotation marks omitted) (alteration in original)); *cf. Harper*, 179 F.3d at 1312 (concluding that a prisoner who declined to appeal an untimely grievance failed to exhaust his administrative remedies).

Bryant v. Rich, 530 F.3d at 1378.  If one claim is unexhausted, the Court may separate that claim out and proceed on those claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1; Jones v. Bock, 549 U.S. 199, 223, 127 S.Ct. 910, 925 (2007) (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Plaintiff is housed within the Bureau of Prisons [hereinafter "B.O.P."], which has an administrative grievance program.  *See* 28 C.F.R. § 542.10 (2009).  The B.O.P. regulations provide that an inmate "shall first present an issue of concern informally to staff . . . ."  28 C.F.R. § 542.13(a).  The normal grievance process requires the filing of an informal grievance, § 542.13, and a formal grievance, § 542.14, at the institutional level.  The "deadline" for filing one of these grievances at the institution is "20 calendar days following the date on which the basis for the Request occurred." § 542.14(a).  If the grievance is denied at the institution, the prisoner may file an appeal to the regional level within 20 days of the date the Warden signed the response, followed by an appeal to the General Counsel at the central office within 30 days of the date that the Regional Director signed the response.  § 542.15.

---

12 Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005).

Likewise, there are deadlines for prison officials to respond to a grievance at each level.  The Warden must respond in 20 calendar days, the regional director must respond in 30 calendar days, and the General Counsel (the central office) must respond in 40 calendar days. § 542.18.  "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id.*  Extensions are permitted, but the staff must inform the inmate of the extension "in writing."  *Id.*

A discretionary exception permits an inmate to bypass the informal resolution attempt "when the inmate demonstrates an acceptable reason for bypassing informal resolution."  28 C.F.R. § 542.13(b).  Exceptions are for "sensitive issues," when the inmate "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution . . . ."  28 C.F.R. § 542.14(d)(1).  Pursuant to the regulations, an inmate must file a grievance within "20 calendar days following the date on which the basis for the request occurred."  28 C.F.R. 542.14(a).  An extension in filing may be allowed if the "inmates demonstrates a valid reason[13] for delay."  28 C.F.R. § 542.14(b).  In such a case, the inmate could submit a request or grievance directly to the appropriate regional director.  28 C.F.R. § 542.14(d)(1).

---

[13] "Valid reasons for delay include the following:  an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed." 28 C.F.R. § 542.10(b).

Plaintiff's claims against Defendant Knight, as alleged in the second amended complaint, took place in late 2004 or early 2005.  Plaintiff did not give a clear ending date to the alleged abuse from Defendant Knight in the complaint, but she clarified in her response, doc. 76, that her "abuse" ended when she was placed in the SHU, which occurred on January 10, 2006.  She did not file her initial grievances within 20 days of the occurrences.  As noted above, there is developing case law that compliance with procedural rules might be excused where the procedures are not realistically available.  Perhaps Plaintiff could be excused from filing her grievance in 2005, given the possible danger to her.  But this court need not address that problem because, as will be explained ahead, the Bureau of Prisons considered her grievances against Defendant Knight on the merits, and did not reject them for this procedural reason.

First a word about Plaintiff's initial grievance.  Plaintiff did file a grievance of a "sensitive nature" in June, 2006, mentioning the sexual abuse by Knight.  That grievance was rejected in July, 2006, on procedural grounds, that it was deemed to be not "sensitive," despite the fact that Plaintiff accused three officers of raping her and the officers were under criminal investigation leading to indictments in this court and, when officers attempted to serve arrest warrants, the death of two officers.  It will be accepted as true that Prison Inspector George Williams, who was investigating a number of sexual abuse cases at FCI Tallahassee at that time, told Plaintiff to grieve using the "sensitive" grievance process.  This has the ring of truth to it, and will be assumed here to be true, as Williams was then pursuing a criminal investigation at the institution.  In any event, Defendant has the burden of proof and has not contested this assertion.

In response to this first grievance, the central office told Plaintiff that she had to use the normal procedure, at the institutional level.  Plaintiff, by this time, had given statements to the criminal investigators and had made her complaint of rape known at the highest level of the Bureau of Prisons.  Plaintiff could not then have been deterred by fear of correctional officers, and should have immediately filed a proper grievance. She did not.  She waited several more months and did not file her informal grievance alleging rape by three prison guards, including Defendant Knight, until October, 2006. This could have resulted in a refusal to consider her grievances for procedural reasons, but it did not.

On October 26, 2006, Plaintiff filed an informal grievance alleging that she had been "raped and molested" by officers Spence, Dixon, and Knight.  Doc. 76, Ex. B (doc. 76-2, p. 11).  This grievance directly accused Defendant Knight of rape.   The grievance was rejected with the note that reduction of a prison term is a matter for the courts.  *Id*. It was also suggested that she obtain a lawyer to pursue the matter through the court system.  *Id*.  This was a response on the merits.

Plaintiff followed this grievance with a formal grievance at the institutional level, filed on December 11, 2006.  While her claims there were mixed with claims concerning her prison assignment, read liberally this grievance continued to seek relief for the alleged assault by Defendant Knight.

Plaintiff next appealed to both the regional level and the central office.  As noted above, she received responses on the merits to both grievances, on February 1, 2007, and May 3, 2007, respectively.  Again she was told that she could not get monetary damages for her claims by means of a grievance, and was directed to other legal

remedies. This was the same "on the merits" response she got at the institutional level to her informal grievance of October 26, 2006.

In summary, while the Bureau of Prisons could have stood upon procedural grounds and rejected Plaintiff's grievances concerning the alleged sexual assault by Defendant Knight as untimely, but it did not. It gave the only response it could: monetary remedies of that sort (or reduction of sentence, as she had suggested) could not be provided. She properly exhausted her administrative remedies. Defendant's Knight's motion for summary judgment should be denied as to this issue.

**Preclusion of recovery for mental or emotional injury**

Defendant Knight also seeks summary judgment to preclude Plaintiff from recovering monetary damages for mental or emotional injury, arguing that she has not alleged that she suffered physical injury. Doc. 68, pp. 4-5. Defendant contends that Plaintiff's claim for compensatory and punitive damages cannot survive the "physical injury" requirement of the PLRA, 42 U.S.C. § 1997e(e). That statute provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Defendant points out that in response to interrogatories, Plaintiff acknowledged that she did not suffer any physical injuries. In response to interrogatory 8, which asked Plaintiff to describe her injuries, Plaintiff said:]

> The injuries are psychological and emotional. The injuries have left me with flash backs and deeply depressed. I was on psychotropic medications for several months, and in treatment with a therapist.

Doc.68, Ex. B, interrogatory 8 (doc. 68-2, p. 5).

Harris v. Garner, 216 F.3d 970 (11th Cir. 2000), *reinstating in part* 190 F.3d 1279 (11th Cir. 1999), is this circuit's most significant case construing § 1997e(e).  In Harris v. Garner, 190 F.3d 1279, *supra* (hereinafter "Harris I"),[14] several prisoners brought suit alleging Fourth, Eighth, and Fourteenth Amendment due process claims arising from searches conducted by prison officials.  190 F.3d at 1282.  The court determined that:

> [T]he physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in *Hudson*[15] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant.

190 F.3d at 1286.  The court further said:

> In light of the *Hudson* Court's rather fluid approach to what can constitute a cognizable injury under the Eighth Amendment, *see  Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (malicious and sadistic use of force is violative "whether or not significant injury is evident""), we have never held that a prisoner must allege a physical injury in order to make out a cognizable claim under the Eighth Amendment.  Indeed, some of our cases suggest the contrary.

*Id.*, at 1287.  In a footnote, the court commented:

> We do not resolve the question whether *de minimis* uses of physical force might satisfy section 1997e(e) if they are of the sort "repugnant to the conscience of mankind," *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000, (citation and internal quotation marks omitted), because we find that on this record the question is not presented.  Wade's forced "dry shave" is not the sort of physical force "repugnant to the conscience of mankind."

*Id.*, at 1287 n.7.

---

[14] Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied* 121 S. Ct. 2214 (2001).  The parts of the panel opinion relevant to this legal issue were reinstated.

[15] Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

Thus, the "physical injury" requirement of § 1997e(e) is equated with the concept of *de minimis* injury in Eighth Amendment jurisprudence, and the *de minimis* injury requirement is satisfied if the physical force used was "repugnant to the conscience of mankind."  I have no difficulty concluding that a sexual assault upon a prisoner by a correctional officer who has authority over the prisoner, and the responsibility to protect and care for the prisoner, is repugnant to the conscience of mankind.[16]

> A sexual assault on an inmate by a guard-regardless of the gender of the guard or of the prisoner-is deeply "offensive to human dignity."  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' "

Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000), *quoting*, Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff has satisfied the "physical injury" requirement of § 1997e(e) by the kind of claim she has alleged against Defendant Knight.  This second aspect of Knight's motion for summary judgment should be denied.

---

[16] *See*, Liner v. Goord, 196 F.3d 132, 135 (2nd Cir. 1999) ("First, there is no statutory definition of "physical injury" as used in section 1997e(e).  Nevertheless, accepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense.").  *Accord*, Kahle v. Leonard, 2006 WL 1519418, *10 (D. S.D. 2006) (No. CIV. 04-5024-KES), *aff'd as to other rulings*, 477 F.3d 544 (8th Cir. ), *cert. denied*, 128 S.Ct. 201 (2007) (citing Liner).

**Recommendation**

Accordingly, it is **RECOMMENDED** that Defendant Knight's motion for summary judgment, doc. 68, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 19, 2009.

s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**